UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESTINEE BRYCE,

      Plaintiff,
                                          Case No. 22-
                                          Hon.

v.

CITY OF STANTON and JACOB
VANBOXEL, in his Individual and
Official capacities,

      Defendants.
_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____/

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, DESTINEE BRYCE, by and through her attorneys, THE

MASTROMARCO FIRM, and hereby complains against Defendants, CITY OF STANTON and

JACOB VANBOXEL, in his Individual and Official capacities, stating as follows:

## COMMON ALLEGATIONS

1.     That Plaintiff is a resident of the County of Lake, State of Michigan and is

otherwise domiciled in the State of Michigan.

2.     That Defendant City of Stanton is a municipal corporation operating within the

County of Montcalm, State of Michigan and is otherwise domiciled in the State of Michigan.

3.      That Defendant Jacob Vanboxel was and is, at all times material hereto, the City Manager of the City of Stanton and is otherwise domiciled in the State of Michigan.

4.      That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

5.      That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to U.S.C. § 1367.

6.      That venue is proper with this Honorable Court pursuant to 28 U.S.C. § 1391.

7.      That Plaintiff is a member of a protected class based on her gender and height.

8.      That Plaintiff's gender is that of female, and her stature is 4'7 inches tall.

9.      That at all times material hereto and at present, the Plaintiff is a certified police officer in the State of Michigan.

10.      That on or about July 21, 2016, Defendant City of Stanton hired Plaintiff as a part-time police officer.

11.      That on or about August 16, 2016, Defendant City of Stanton promoted Plaintiff to a full-time police officer.

12.      That Plaintiff was supervised by Police Chief Joe Patino.

13.      That Chief Patino subsequently began grooming Plaintiff as his eventual replacement.

14.      That in Chief Patino's absence, Plaintiff would serve as Acting Chief.

15.      That during the month of April 2019, Defendant City of Stanton paid for Plaintiff to attend a three-week long command supervision school, further preparing Plaintiff to take over as chief upon Chief Patino's retirement.

16.     That as Chief Patino's retirement approached, however, individuals in the community began opposing Plaintiff's advancement to the chief position, indicating that some believed that a woman of Plaintiff's stature could not succeed in the position.

17.     That this same discriminatory sentiment was shared by Stanton Mayor Lori Williams in July 2020, who, opposed Plaintiff's future appointment to the position of Police Chief, stating that the City of Stanton should post the Police Chief position as open and accept applications for interviews.

18.     That Chief Patino responded, pointing out the disparate treatment Plaintiff was receiving, because when the previous chief retired, Chief Patino was appointed, despite interest from other candidates, by the City Manager.

19.     That Plaintiff subsequently conversed with former City Manager Vester Davis, Jr., who informed Plaintiff that he had the authority to appoint someone to the chief position and he would be giving Plaintiff that opportunity.

20.     That former City Manager Davis further stated that 'some people' had it out for Plaintiff and there was a target on her back.

21.     That City Manager Davis specifically mentioned receiving an email from a neighboring chief of police, who advocated against Plaintiff's hiring.

22.     Notwithstanding efforts to prevent Plaintiff from obtaining the Police Chief position, Defendant City of Stanton promoted Plaintiff to the position of Police Chief upon Chief Patino's retirement.

23.     That in October 2020, City Manager Davis also left his employment with Defendant City of Stanton.

24.     That in City Manager Davis's absence, Mayor Williams took over his duties.

25.     That on or about January 4, 2021, Defendant Jacob Vanboxel began working as the new City Manager.

26.     On that date, Plaintiff met with Mayor Williams and Defendant Vanboxel.

27.     That Defendant Vanboxel informed Plaintiff that he had been "brought up to speed" by Mayor Williams and it was his understanding that the City wanted to hire Matt Pumford, whom was to be her subordinate, and whom was at that time an officer with the City of Beaverton, as a full-time officer and in order to hire him, would need to pay off Officer Pumford's contract with Beaverton, for approximately $7,800.

28.     That Pumford was never intended to be Plaintiff's subordinate, as represented by defendant to the public.

29.     That it was Defendant's intention to hire Pumford, a male, to replace the Plaintiff.

30.     That on or about February 19, 2021, Officer Pumford was sworn in at the Stanton Police Department.

31.     That a month and ½ after Pumford started and on or about April 2, 2021, Plaintiff received a message from Officer Pumford, requesting a meeting.

32.     That Plaintiff and Officer Pumford arranged to meet on April 7, 2021.

33.     That on or about April 7, 2021, Plaintiff met with Officer Pumford, who proceeded to act insubordinately and stated he did not like the way Plaintiff did her job.

34.     That Officer Pumford subsequently attempted to have Plaintiff hire a friend of his as a part-time officer.

35.     That following Plaintiff's refusal to hire Pumford's 'friend,' Vanboxel and Mayor Williams began interfering with Plaintiff's oversight of the police department.

36.     That for instance, on or about April 20, 2021, Defendant Vanboxel and Mayor

Williams requested Plaintiff to enforce a 'no overnight parking' restriction.

37.     That despite said instruction, on or about April 21, 2021, Defendant Vanboxel instructed Plaintiff to not issue parking tickets to those vehicles abusing overnight parking, even though Officer Pumford had placed warning placards on approximately twenty-four (24) vehicles the previous night.

38.     That Plaintiff protested Defendant Vanboxel's attempts to micromanage the police department and expressed the need for them to have confidence in her ability to lead the department.

39.      That Defendant Vanboxel frequently refused to value Plaintiff's input or information, demonstrating his negative view that a woman of Plaintiff's stature should not be a police chief.

40.     That as an example, on or about May 4, 2021, Plaintiff received a call from a deputy with the Montcalm County Sheriff's Office, who advised he had arrested a drunk driver, but the driver got away without penalty, because the stop signs in the City of Stanton were non-conforming to Michigan Department of Transportation standards.

41.     That Plaintiff reported the nonconformance of the stop signs to City Manager VanBoxel, who indicated he would speak with James Blum, Director of City of Stanton Department of Public Works.

42.     That Defendant Vanboxel subsequently contacted Plaintiff and advised that Director Blum had said the stop signs were legal.

43.     That Plaintiff again reported the nonconformance of the stop signs and further stated that she had contacted the Department of Transportation, which provided an explanation of the standard.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

44.    That as time went on in April and into May, Officer Pumford became increasingly insubordinate to the Plaintiff.

45.    That Defendant Vanboxel condoned, tolerated, and encouraged Officer Pumford's insubordination.

46.    That as an example, on or about May 7, 2021, Officer Pumford chose to work particular hours of his own choosing, instead of the hours Plaintiff had instructed him to work.

47.    That when Plaintiff questioned Officer Pumford about his failure to work the scheduled hours, Officer Pumford became extremely upset and proceeded to be insubordinate, indicating that they would have a meeting tomorrow.

48.    That the following day, on or about May 8, 2021, Plaintiff questioned Officer Pumford as to why he felt his behavior was acceptable and Officer Pumford, again, became angry and walked out of the meeting.

49.    That Plaintiff reported Officer Pumford's actions to City Manager Vanboxel, who did nothing in response.

50.    That from May through and including the date of Plaintiff's termination August 2, 2021, the Defendant's tolerated the insubordination of Plaintiff's subordinate, and cautioned her she would be disciplined if she disciplined young Pumford.

51.    That in fact the Defendants did in fact hire another officer to act as Pumford's assistant, once Plaintiff was terminated.

52.    That in fact the Defendants did terminate the Plaintiff on August 2, 2022 and promoted Pumford to Police Chief.

53.    That any reasons given for Plaintiff's termination (that in fact the Defendant's broadcast to the local news) were pretextual in nature, and to mask their true reasons.

54.     That Defendants also reported the false and defamatory reasons for Plaintiff's discharge to the MCOLES – which Defendant MCOLES found to be 'unsubstantiated.'

55.     That Defendants were motivated to defame the Plaintiff and provide false information to State of Michigan reporting agency (MCOLES) to prevent the Plaintiff from getting a job in the future, and to place false information on her personal record for the State of Michigan licensing agency.

56.     That Defendants' actions constitute gender discrimination in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.

57.     That Defendants' actions constitute gender discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

58.     That Defendants' actions constitute height discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

59.     That a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

60.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

61.     That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

62.     That Plaintiff hereby claims punitive damages.

63.     That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to MCL 37.2801 and 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – SEX DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983 & THE FOURTEENTH AMENDMENT

64.     That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 63 of her Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

65.     That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

66.     That the Fourteenth Amendment provides in part:

No State shall . . . deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1.

67.     That Plaintiff seeks punitive damages against Defendant VanBoxel in his individual capacity.

68.     That both the Equal Protection Clause and the concept of Substantive Due Process

protect against intentional discrimination based on sex.

69.    That claims brought under Section 1983 "must prove the same elements required to establish a disparate treatment claim under Title VII of the Civil Rights Act of 1964." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).

70.    That Plaintiff was a 'just cause' contractual employee and had a property interest in her employment.

71.    That at all times material hereto, Defendants acted under the color of State law when they terminated the Plaintiff and sent in false and bogus information to MCOLES concerning Plaintiff's employment separation.

72.    That Defendants subjected Plaintiff to discriminatory treatment due to her sex.

73.    That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her sex, female.

74.    That at all times material hereto, Plaintiff was and is qualified for the position of Police Chief.

75.    That Defendants took adverse employment action against Plaintiff by terminating her employment.

76.    That Plaintiff suffered the adverse employment action under circumstances that give rise to an inference of sex discrimination.

77.    That Defendants replaced Plaintiff with someone outside her protected class, a male.

78.    That Defendants' proffered reasons for terminating Plaintiff's employment are pretextual in nature.

79.    That Defendants' proffered reasons for terminating Plaintiff's employment are

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

either not based in fact, did not actually motivate the decision, and/or were too insignificant to warrant the action taken.

80. That at all times material hereto, Defendants acted pursuant to a policy or custom.

81. That the discriminatory actions in question were taken by officials with final decision-making authority, which satisfies the policy or custom requirement. See *Mann v. Helmig*, 289 F. App'x 845, 848 (6th Cir. 2008).

82. That Defendant CITY OF STANTON and Defendant VANBOXEL in his official capacity are not entitled to any type of immunity as they are municipal entities. See *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005).

83. That Defendant VANBOXEL in his individual capacity is not entitled to qualified immunity.

84. That Plaintiff's right to be free from intentional discrimination based on her sex was clearly established. See *Davis v. Passman*, 442 U.S. 228, 236; 99 S. Ct. 2264 (1979)("The equal protection component of the Due Process Clause thus confers on petitioner a federal constitutional right to be free from gender discrimination"); *Poe v. Haydon*, 853 F.2d 418, 430 (6th Cir. 1988)("There can be little doubt that, before December 1984, a female public employee had a constitutional right to be treated on the same basis as a male employee.").

85. That Defendants' actions constitute gender discrimination in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.

86. That a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer

contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of recovery.

87.     That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

88.     That Plaintiff hereby claims the costs of this action and reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

89.     That Plaintiff hereby claims punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – SEX DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

90.     That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 63 of her Common Allegations and paragraphs 65 through 89 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

91.     That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of sex. MCL 37.2202(1)(a).

92.     That at all times material hereto, Defendants constituted an "employer," as the

term is defined by the Act.  MCL 37.2201(1).

93.     That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her sex, female.

94.     That at all times material hereto, Plaintiff was and is qualified for the position of Police Chief.

95.     That Defendants took adverse employment action against Plaintiff by terminating her employment.

96.     That Plaintiff suffered the adverse employment action under circumstances that give rise to an inference of sex discrimination.

97.     That Defendants replaced Plaintiff with someone outside her protected class, a male.

98.     That Defendants' proffered reasons for terminating Plaintiff's employment are pretextual in nature.

99.     That Defendants' proffered reasons for terminating Plaintiff's employment are either not based in fact, did not actually motivate the decision, and/or were too insignificant to warrant the action taken.

100.    That Defendants' actions constitute gender discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

101.    That a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

with an additional amount to offset any negative tax consequences incurred as a result of recovery.

102.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

103.    That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to MCL 37.2801 and 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – HEIGHT DISCRIMINATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

104.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 63 of her Common Allegations, paragraphs 65 through 89 of Count I, and paragraphs 91 through 103 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

105.    That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of height. MCL 37.2202(1)(a).

106.    That at all times material hereto, Defendants constituted an "employer," as the term is defined by the Act.  MCL 37.2201(1).

107. That at all times material hereto, Plaintiff was and is a member of a protected class by virtue of her height.

108. That at all times material hereto, Plaintiff was and is qualified for the position of Police Chief.

109. That Defendants took adverse employment action against Plaintiff by terminating her employment.

110. That Plaintiff suffered the adverse employment action under circumstances that give rise to an inference of height discrimination.

111. That Defendants replaced Plaintiff with someone outside her protected class, a substantially taller individual.

112. That Defendants' proffered reasons for terminating Plaintiff's employment are pretextual in nature.

113. That Defendants' proffered reasons for terminating Plaintiff's employment are either not based in fact, did not actually motivate the decision, and/or were too insignificant to warrant the action taken.

114. That Defendants' actions constitute height discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.

115. That a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer economic damages, including, but not limited to, lost wages, back pay, front pay, health, dental, vision, and/or life insurance benefits, short-term and/or long-term disability benefits, pension and/or retirement benefits, investment opportunities, employer contributions, and any and all other compensation and/or fringe benefits lost to Plaintiff along with an additional amount to offset any negative tax consequences incurred as a result of

recovery.

116.    That as a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer noneconomic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, denial of social pleasures, and disruption of lifestyle.

117.    That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to MCL 37.2801 and 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>August 4, 2022</u>          By:          <u>/s/ Victor J. Mastromarco, Jr.</u>
                                                VICTOR J. MASTROMARCO, JR. (P34564)
                                                KEVIN J. KELLY (P74546)
                                                Attorneys for Plaintiff
                                                1024 N. Michigan Avenue
                                                Saginaw, Michigan 48602
                                                (989) 752-1414
                                                vmastromarco@mastromarcofirm.com
                                                kkelly@mastromarcofirm.com

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff, DESTINEE BRYCE, by and through her attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>August 4, 2022</u>        By:    <u>*/s/ Victor J. Mastromarco, Jr.*                    </u>
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com